Good morning. May it please the Court, I'm Larry Engel from Morrison & Forster. I'm here for Appellant Jack Tramiel. At the center of the District Court errors is an option. The Independent Board and the Independent Council, as found by the Bankruptcy Court, set a quick sale at book value, $10 million, for eight parcels of excess land. The company needed the cash, didn't need the real estate. What Mr. Tramiel insisted on was, in addition to the price, that he also pay with an option, where the company could reacquire the property at the same $10 million plus a reasonable rental, approximately 10% of that amount. So the option assures that when you have that $10 million plus the value of the option, you always have reasonably equivalent value. That's the reason and the way that buyers deal with distressed companies, to avoid having to be here in situations like this today, that there be no risk of a fraudulent transfer. And, in fact, in this situation, the bankruptcy judge did grant value for that option, in the difference between the classic way that people do it. Do you agree that the Bankruptcy Court's valuation on the option was correct? At the time, based on the value of the real estate. At the time, based upon the way the Bankruptcy Court did it. Yes. So you agree that it was $400,000 and change? Yeah. Yes. The problem became, Your Honor, as you're anticipating, that the increase in the value of the property, the fair market value of the property by the District Court, which isn't what the District Court should have been doing, was not matched by a corresponding increase in the value of the option. So they froze the option at the $400,000 level that you mentioned, and increased the value of the property by millions of dollars, basically by ignoring the expert discounts that both parties are experts. If we were to follow the bankruptcy judge's analysis, it wouldn't make any difference, would it? Would it make any difference? Well, Mr. Turmail was the prevailing party, and so it made a difference that he prevailed at the Bankruptcy Court, and then the District Court changed the value. That's my point. If we're dealing with what the Bankruptcy Court evaluated it at, it doesn't make any difference that the option price being evaluated on what the District Court had done. I think the question is that we're reviewing the Bankruptcy Court. Right. So regardless of what the District Court did, is that your question? Yes. Regardless of what the District Court did, we really have to go back to see whether the Bankruptcy Court was correct in the approach it took. The Bankruptcy Court was correct. Correct. And Mr. Turmail was the prevailing party. He had zero liability net at the end of the day. And the problem became, as you know from the papers, that when we raised these issues at the District Court, the counsel did for Mr. Turmail, the District Court judge said you didn't file a prevailing party cross-appeal, and therefore you don't get to argue that the value of the option should increase. That's how he justified freezing the value of the option, even though we increased the value of the real estate, thereby devaluing the option. But my point was, in the question earlier, what difference does that make if we're dealing with what the Bankruptcy Court did? Well, if we're dealing with the Bankruptcy Court, the Bankruptcy Court is correct. I'm trying to correct the District Courts. Okay. Forget the District Court. Okay. We'll forget the District Court. With respect to the reply that I haven't been able to yet respond to on this issue, instead of accepting the traditional valuation of this option as the difference between the fair market value of the property and the exercise price, that difference is normally the way you value options. That's what the experts said at the Bankruptcy Court level. The trustees come up with a new theory. It sounds fancy. Net benefit to creditors is the way they cite it, and they cite Northern Merchandise as the basis for that. But it's not real. There is no such theory for this proposition of value. They make it sound like this is subtle law. And, in fact, all it is is a statement of a general principle in fraudulent transfer law that you can have indirect effects. So a creditor gets the benefit of a subsidiary's payment rather than just direct payments from the parent company. And that has nothing to do with this option. And so it seems to us that it's very clear we're entitled to the value of that option at that difference between the fair market value, whatever that is, and the amount of the exercise price. And this whole notion of just-in-case cross-appeals, it seems to us, is really quite dangerous, because here we had nothing to appeal. I mean, we agreed with the Bankruptcy Court's ruling. The option value was correctly calculated. So what were we going to appeal? I think we've tried to say never mind what happened at the district court. Okay. All right. Because we're looking to Novo. Bankruptcy Court. Forgive me, Your Honor. We also have the question of the settlement credits. There were, in fact, multiple parties here settling for over $8 million. And we are entitled to a credit with respect to that. Now, the Bankruptcy Court gave us the credit for some of the settling co-defendants but decided she didn't need to reach the second set because we already had zeroed out and then some any exposure that we had on that small amount of liability. So she did not reach the question of the other settling defendants, and we are looking for credit for that whole set of settling defendants based on the fact that there was alleged, in most cases, joint liability. Obviously, they made the point in their papers that, you know, we shouldn't get legal malpractice. That's fine. We're not claiming that. But the long and the short of it is that we are claiming the rest of the joint allegations, and it's based on the allegation, not based on a finding of joint liability, which is they're just construing the Knox case, which very clearly I think says that it's just a question of the liability. If you're following what the Bankruptcy Court did, you wouldn't be entitled to anything else, would you? Well, if we get zeroed out, then we stop. Right. I mean, so then it's game over. Game over. We win, which is what we want. Yes. If we get credit. I'm not quite sure what we're talking about in terms of needing more settlement credit. Well, right now. Is that like extra money in the bank just in case? Well, that's the question. Yes. Exactly, Your Honor. I mean, right now Mr. Tramiel has a lien on his house, which he's not happy about, for a lot of money based on the district court decision. Right? And he started out with zero liability, and all of a sudden he's got this giant lien on his house. And we're trying to eliminate that by going back to where the Bankruptcy Court properly was at the beginning. And so. Just to be clear, if the Bankruptcy Court was correct, then this issue is in effect moot? Yes. Yes. And if you go to the Cochran case that we cited, for example, where you recall the decision was that one, the court ruled on one of four issues, alternative theories. The one that was ruled on was reversed on appeal. They got to come back with the others. We're happy to have the chance to come back if we have to, but we're happier to win on the first one as the Bankruptcy Court properly ruled. Let me shift this a moment, if I may, in watching my time, to this very strange argument that they have about a total forfeiture of any credit for Mr. Tammeil for the money that he paid and the option he gave. There's this strict liability windfall idea that the trustee's been advancing. And I just want to touch on a couple of things. Honey, let me ask you a question. Yes. If I understand it right, you're you rely on California code, which is 383908. Yes. Well, my question is, 343907 and 08 appear to me to have to do with creditors' remedies or the transferee's defenses, liability and protection, whereas voidability itself comes out of 383904. Can I address that? Yes. Because I'm asking a question. Actually, you're falling into the analysis that the trustee is arguing, which is wrong. Let me focus you just quickly a moment, Your Honor, on 343907A1. Okay? And what the statutory language, which plain meaning is what we're all looking for, right? It says, In an action for relief against a transfer or an obligation under this chapter, a creditor, underlined in your mind, subject to the limitations in section 343908, may obtain, number one, avoidance. Avoidance. It says avoidance. Right? My question, I wasn't very clear, is that that section itself has to do with creditors' remedies under California law. Yes. So my suggestion is that that section plus 08 are the State law analog, if you will, to 550 on the Federal side. Yes. Yes, Your Honor. So you just ignore them. I mean, once voidability is determined under 04, transaction is voidable. Then you go back into the Federal bankruptcy code and you say for a voidable transaction, the remedy is pop up the property or devalue. Well, no, I think the analysis is really this, Your Honor. If you begin with 544, right? 544 says that it has to be a, quote, voidable under applicable law. That's right. And so you look to California. And then you go back to California law. But what section of California do you go to? You go to 04. No. No, Your Honor. You go to 07A1 and 08. It's the remedy section. Well, but it says voidable because if you look at the language of 07A1, it says creditors may only obtain avoidance subject to the limitations in 343908. Right? Avoidance is what's in A1. So 07 overrides and implements the other parts of the California law to protect people for exactly this situation. And if you were to follow the trustee's theory, then this section means nothing and doesn't help, you know, anyone. And you make 34, you would make 548C, which is the corresponding equivalent in the bankruptcy code, irrelevant. Because everyone would, if you were a trustee, use this section and grab for total liability as opposed to giving the credit. So literally what you're doing here under the trustee's theory is you are creating a were in that favor, and the other allegations that they're making are not substantiated. But no liability under the bankruptcy code for what this situation arises under. No liability under State law. Somehow, magically, under this interpretation that they've come in with, under 544, the combination of 544 applying State law only applies part of State law, not the whole of State law, as to the fraudulent transfer. And that's an error. And if you were to rule that way, all those cases that they dismiss as Ponzi cases would fall, too. You would be upsetting the result in many Ninth Circuit fraudulent transfer cases because they couldn't stand with that analysis. You know, and it's not just, you know, cases like Cifola and Pete Packing. It's the three Ponzi cases that they mentioned where they allowed the victims to get their principal back. Not their profit, but their principal. And the only way you can do that is, in fact, by accepting the interpretation that I've offered. Unless there are any questions, I better save the rest of my time. Okay. Thank you.  Mr. Worms. May it please the Court. I'm Jeff Worms, Wendell Rosen, for the trustee, Suzanne Decker. I'll just talk about the bankruptcy court decision. Could you keep your voice up a little bit? Certainly. I'm sorry. I will just speak about the bankruptcy court decision. I'll dispense with the district court decision, then. With regard to the bankruptcy court decision, they, and what's before this court, there were two transfers that we're talking about today. We're talking about a fraudulent transfer of real property. The issue with regard to whether the real property sale was a fraudulent transfer has already been decided, and that was decided correctly by the bankruptcy court. It was a fraudulent transfer. There wasn't reasonably equivalent value given. The debtor was insolvent. The second issue has to do with repayment of money of a loan under Delaware law, and the third issue has to do with the settlement and the credit. With regard to the real property sale, there is no question that the transfer was fraudulent. The only question is, what is the recovery for the bankruptcy estate? And the Mr. Trammell says that he is entitled to assert state law defenses with regard to recovery to reduce his liability under Section 550 of the Bankruptcy Code. Your Honor was right. There are two separate issues with regard to avoidance. There's the avoidance issue and there is the recovery issue. With regard to the avoidance issue, that's been settled and it has not been appealed. It was avoidable. With the ---- What section in California law makes the transaction avoidable? In other words, what is the applicable law through which one looks? Right. 3409.04 and 05 has been stated by this Court as the sections of California law to which a bankruptcy court can refer to avoid a transfer. Once you have established avoidance under 544B, which is the section that we use that allows the trustee to refer to California law, you go to a second question, is what is the recovery amount? That is in this Court in the Asakia case said that state law recovery provisions are precluded or superseded by Section 550. And there's a good reason for that. The reason is that bankruptcy has completely different policy with regard to recovery than state law does. Under state law, the equities are between the buyer and the seller. And so you look the ---- Not taken into account are the rest of the creditors of the debtor, the seller. But in bankruptcy, it's a different issue, different policy considerations. The underlying policy in bankruptcy, as this Court knows, is equitable distribution among all creditors. And that's why bankruptcy doesn't look to state law to see what the recovery is. But that issue isn't exactly the one that's posed here. And, I mean, all your cases kind of have that condition that is somebody's trying to cap the extent of avoidance to one creditor's claim. Right. And we've said, no, no, no, no, no, you can't cap it to one creditor's claim. It's for the benefit of the estate as a whole. Right. Right? So it's not exactly. No. In this situation. And this situation is somewhat closer to agricultural whatever, which is pretty close on point, and it in fact does just almost assume that one looks to the entire body of State court fraudulent convenience law. I, okay, so I'll address that. With regard to whether this issue is closer to agriculture or Agritech or whether it's closer to ASAQEA and Moore and the rest, I think it's much closer to Moore and ASAQEA. And the reason is, first of all, Agritech didn't reach the point. Agritech talked in dicta as to what possibly it would have done had the transferees acted in good faith. It's an opinion by which we're bound. Bound. I'm sorry? It's a reasoned exposition in a published opinion, which under Berepin binds this panel. So it may well be dicta. I agree with your definition of dicta, but the Court didn't, so we're bound by it. It is dicta, and I don't, I think the problem is, if you look back to Moore, which Assume we're bound by it, okay, in the purpose of your answer. Okay. Okay. Assume you're bound by ASAQEA with regard to, you're talking about the recovery under 550 or you're talking about avoidance under 544B. I expect you're talking about recovery under 550 with Agritech. The fact, I'm talking about whether you, applicable law includes 343907 and 08 as well as 04 and 05, or whether it does not. And the extent to which that answer follows from agriculture, which appeared to take the entire State fraudulent conveyance law, be it as Hawaii rather than California, including its good faith deduction or offset credit, whether you don't. Well, that would, it would, it would create, first of all, I think it would create a conflict with ASAQEA, because if, if Agritech were correct, then ASAQEA would have been decided differently, because ASAQEA looked to State law. It's the equivalent of 3439.07, where there's a cap. That cap is State law. If Agritech were correct, ASAQEA, which followed Agritech, would have had to have allowed that cap. What do you mean when you say if it were correct? Well, if, if Agritech was more than just dicta, if Agritech control, if Agritech's proposition. But it, you know, I guess what you're trying to reconcile in your view, you, you think ASAQEA is correct or not correct? Agritech and ASAQEA conflict. One said that they wouldn't use, that they would use State law, and the other said, we're going to dispense with State law. We're not going to follow State law. Now, Agritech didn't get to the issue. It was dicta. ASAQEA, it was part of the holding. So if, if you can't really recognize both, because there's an inherent contradiction between the two, either you're going to apply State law or you're not going to apply State law. And I would say that ASAQEA, which was a later case and actually held whether to apply State law, that is the case that needs to be followed. In addition to that, the Supreme Court in Moore came out on the side of ASAQEA. It dispensed with State law. And Moore, it was just a Supreme Court case, that holding was incorporated directly into 544B. So the only way that you can, that Agritech, Agritech is an outlier. Agritech is an outlier. And the only way to resolve it is to recognize it for what it was, which was dicta, which didn't have to be decided. Now, but we get to that issue only if, in fact, they are entitled to a partial avoidance under State law. This is all very good as to what bankruptcy law does, but the first issue is whether they're entitled to a partial avoidance under State law. What do you mean by that phrase? Partial avoidance? Okay. Something concrete. Okay. Something, oh, something concrete. Under State law, that cap we were talking about? Okay. If there was a $100,000 transfer and the suit was filed by a creditor with a $5,000 claim, the $100,000 is avoidable, but it's only partially avoidable because there's only a 5,000, the limit is $5,000. That's a partial. Also, under 522 of the Bankruptcy Code, okay, that allows for avoidance, and it says very clearly, to the extent that it is allowed. Under 544, we don't have the to the extent language, which is very important. It says you avoid. It's an all or nothing. Nothing under 544. Yes. As is under 549, if you look at the Rice case, the BAP case, which was cited with approval in straight line, the Ninth Circuit case, so that's what I'm talking about and that's what the courts talk about, a partial avoidance. So what it is really, and I'll explain this, is that it's avoidable. We get to your avoidable concept. It's avoidable, but you can then say to a certain extent, that's partial. Under 544, they just talk about it being avoidable. Okay. It's different. And so what we have here are three defenses under State law. Okay. And 544 says you have to use State law to determine whether something is avoidable. All right. Not to what extent. The only defenses as to whether something is avoidable under State law, and those you would incorporate, because we're dealing with avoidability. Those you would incorporate. That would be 3439.08a, which says that if reasonably equivalent value is given on intentional fraud, it's not avoidable at all. That's a defense that has to do with something being avoidable. California law doesn't slice itself out that way, though. It says, 07 says subject to 08. It doesn't say subject to part of 08. No, no, that's true. But, as the Court pointed out, there are two problems. First of all, 07 is a recovery claim. And under ASCQIA, they said you don't get to use 07. It's a recovery claim. All right. That's what they said. So you don't even get to use 07. You don't have to worry about what 08 is incorporated into 07. ASCQIA said you don't even get to use 07. All right. The limitations on the 07. Second of all, 07 has several different types of remedies. It's not just avoidance. And 08 has also several different types of defenses, not just with regard to avoidance. So when you incorporate 07 into 08 into 07, not every defense has to do with avoidance. Some of those defenses have to do with other parts of 07. The only part of 08 that involves avoidance or avoidability is 08A, which says that it's not avoidable if reasonably equivalent value is given. And I believe 08E says certain types of loans are not avoidable. Okay. So those are the defenses that would be incorporated because they deal with avoidability. And if you look at 544, they are incorporating the law with regard to avoidability. All right. Now, with regard to the amount of liability and the extent of avoidability, those are in 08, they aren't applicable under ASCQIA. But even if they were applicable under ASCQIA, they don't get the they don't reduce the liability and the avoidance of Mr. Trammell. And that is because they rely on 08D3. 08D3 is strictly a defense having to do with the amount of liability. That has nothing to do with avoidability. 544 says state law with regard to avoidability. That is different than liability. And that is what their defense is, or their credit, that's the credit they are asking, is made for. What they get under the Bankruptcy Code, and we cite. Let me just go back, because it says under D. D3, right? Yeah. But you have to get, it says notwithstanding avoidability. Right. You get the following in effect. Exactly. So in other words, it's avoidable. It's still avoidable. Notwithstanding the fact that it is avoidable, you get certain defenses on recovery. It's the avoidable part that has to, that's incorporated into the Bankruptcy Code under 544. Once you establish that, you cut off state law and you look. And so the question is, well, how is that possible? How does the Bankruptcy Code address that? The Bankruptcy Code addresses that by giving transferees a claim for the amount of the money they paid. What Mr. Trammell would like is a dollar-for-dollar reduction, or a recoupment, however you want to call it, or a priority claim. All right? That's, in essence, what he would be getting if there was a dollar-for-dollar reduction. The Bankruptcy Code said, no, you get a claim. You pay all the money back because that money has to be equitably distributed. And then you get a claim like everybody else who has paid money to the debtor and didn't get anything in return or had to give it back. And then you get paid like everyone else. It's not a priority. It's not a recoupment. And none of the cases, we have a lot of cases here that if ASSECIA were wrong, there wouldn't have been a claim going back to the transferees. They would have just offset the liability. But we have the straight line. We have VRCO. All of those cases resulted in the transferee giving back all of the property and recovering a claim. That's the established law. If Agritech were right, none of those results could have been possible. Only if ASSECIA is correct are the results of those other cases possible that parties had to pay back the money and they get a claim. And that is completely consistent not only with the plain language of 544, but with the entire policy of equitable distribution, which is one of the underlying main policies of bankruptcy. So we have completely different equities and policies involved here between California law and Federal law, which is why the cases are decided differently and why those other cases came out to the results that they did. Anything else? Okay. Thank you. You're, you're. Is my time up? Your time is up and we'll equalize it out from Mr. Engel. I'll give you a little extra time since we went over. Thank you, Your Honor. Actually, taking the last point as the first point to make, it's the other way around. If this trustee were to succeed in this theory, other cases would fall, including Ag Research, Donald Slatkin, AFI Holdings. You would not be able to have those Ponzi cases. It seems like the sky will fall. Yes. Depending on which position. Absolutely. I think it's the other. Absolutely correct. Now, here's the question I ask this Court. If he's right, with all the trustees bringing all the fraudulent transfer cases all these years, why is there no case where someone in Mr. Jamil's position has ever had to suffer a total loss, a total result the way he's looking at $17 million worth of liability in a situation where the bankruptcy court only found that he did the right thing, he was trying to help in a good faith purchase? As soon as you declare that forfeiture to be the law, you end anybody dealing with distressed companies as a purchaser. Who would ever take that risk? Right now they take the risk because they think, under the prevailing law, which I've been citing, they think that they get protection. They think they get a balance, which is the same balance, by the way, that's in 548C in the bankruptcy code. They think they get protection for the amount they paid, the value they gave. If you take that away, you double the amount or more the amount of exposure that people have and no one is going to take that risk. No one has previously had to take that risk because his theory has never actually prevailed in one of these cases. And so you're talking about an extremely radical change and equitable distribution of creditors has nothing to do with this particular issue. And you're right about ag research. It is, in fact, the case that should be looked at, among others, including the Pete Packing case that we cited, and obviously the district court had the same analysis, and the bankruptcy court. I mean, here's a bankruptcy court, you know, ruling for Mr. Tramiel and against the trustee. I mean, clearly the bankruptcy trustees, bankruptcy court had been doing this for a long time. Am I out of time? Okay. Thank you, Your Honor. I appreciate your time. Thank you, Mr. Engel. Thank you, counsel, both of you, for your argument. And the matter just argued will be submitted.
judges: Hug, Rymer, McKeown